Our fifth case today is Fields v. United States. Mr. Gordon. Whenever you're ready. Your Honor, may it please the court. My name is Jeremy Gordon, and I represent the appellant in this case, Mr. Derek Fields. In my time before the court, I will attempt to answer the three questions that the court asked in their order granting our certificate of appeal ability and setting a briefing schedule. Those questions were which plea is on the table in this matter? Did the district court err in denying the evidentiary hearing in the district court? And does Field's subsequent resentencing after he was found guilty, make this discussion move? All right, so the first thing that I will get into is that it's in our opinion, and it's our position that the district court abused their discretion when they denied Mr. Fields' 2255 motion on the 37-year plea without a hearing. All right, so first of all, it's important to note that there are two offers that were at issue here. There was the offer that we submit Mr. Fields received during jury selection, on the morning of jury selection, which was for the 37-year plea. And then, as the case went on, we, our office, found evidence of another plea that was in the files of Mr. Skidinski that was sent over to us as part of the normal file transfer of a case. Mr. Gordon, was the, in your telling, the 37-year plea, was it a binding plea or a non-binding plea? The things that we have were that it was a 37-year plea. So, we submitted to the court that that means, by its nature, that it would be a 11C1C plea, which would be binding. Because it's our position that that is the only way that you get to a specific number. Because, if it's not under 11C1C, then obviously the court can engage in the sentencing guidelines in the 3553A evaluation. Well, the court can also reject an 11C1C2, right? Yes, Your Honor, the court can reject an 11C1C plea. But, in this situation, we never got there, is what we're submitting, is because Mr., because Attorney Skidinski never advised Mr. Fields about that. Is there anything in the record that would indicate one way or the other whether it was a binding or non-binding plea? No, Your Honor. There's nothing in the record that indicates whether it was a binding or a non-binding  Because, according to your client, his attorney didn't talk to him about it at all, right, other than just mentioning it. That's our position, Judge, that there was nothing that was explained. Sorry, but did the supposed 37-year plea offer contain an appeal waiver? All that we have at this point is that Attorney Skidinski told Mr. Fields 37-year plea. And we submit that goes to the advantages and disadvantages question. Mr. Gordon, what remedy is your client seeking through this 2255? Is he seeking to be convicted and resentenced under this plea agreement rather than under the trial conviction? Yes, Your Honor, because as I calculated in our brief, that would put him at approximately 444 months, which is less than what he received when he was originally sentenced and less than what he received when he was resentenced. Okay. Well, so if he was convicted under this plea, right, he would have waived his later categorical approach-related appeal to the 924C. So he would still have that conviction. So is he willing to take that conviction back on? Well, Your Honor, we would submit, I would need to speak to him about that as part of the evidentiary hearing and as part of the evidentiary hearing prep because our position would be that the next step, if this court were to grant our appeal, would be that we would get sent down for an evidentiary hearing. But from his perspective, it's less time in prison. From his perspective, I would imagine that it would be less time in prison and gets home to somebody sooner regardless of conviction. Mr. Gordon, I thought what, I mean, I guess I'm a little puzzled now because I thought what you were asking for was that the conviction be vacated and that the trial be vacated and that we basically start this case over so that Mr. Fields can get the benefit of effective assistance of counsel. I guess I wasn't under the impression that what you were seeking was for us to enforce a plea given the fact that other than the 37 years, we have no idea whether it was a binding plea, a non-binding plea, what sort of conditions there were in the plea. Neither does Mr. Fields and neither does Mr. Skolinski for that matter. And so I guess I'm kind of confused by your articulation of what remedy your client is seeking. Okay. All right, Your Honor. So here in this place, in this court, what we're asking for is that we get sent back down to the Indiana court for the evidentiary hearing, which by the way, the docket indicates was set and then got eliminated as part of the order denying our 2255. But ultimately, what we would be asking for down there in the district court would be, I believe our remedy is to what I call rewind the case back to the point before the trial so that we can have the opportunity to advise him about the advantages and disadvantages of the 37-year plea and then for him to potentially to take it. And how could you do that? Since nobody knows anything about the terms of this supposed offer. We, well, Your Honor, our position is that when we go to the district court for the evidentiary hearing that we are, that would come from the reversal, that there would be more information that would be fleshed out, if you will, about the offer and about the circumstances. And then where would that come from? It would come from the evidence that's already in the record. It would come from the parties. It would come from the parties and it would come from the information. And then should the court grant that. Excuse me, but does Mr. Fields have additional information about the terms of the supposed offer that are not in the record yet? I know, Your Honor, because he was not advised as to it. I didn't think so. Okay. And Skidinski, I forgot whether he said he doesn't remember such an offer or that there was no such offer. Your Honor, if I remember correctly, I believe that he said that there was no such offer and that he received no offers. Yeah. Okay. So, where would this get from? What would be the sources for fleshing out the terms of this offer that you want to now accept and enforce? Well, Your Honor, we believe that we would have, once we got back down to the district court, then the U.S. Attorney's Office would be encouraged to review their files, review and look and see what do they have and what do they not have, and then for any such thing to be presented. And then if it is granted to us, if we are successful in the district court, for another offer to be presented and for us to engage in further deliberations in the district court. Mr. Gordon, focusing on another issue, your client also has to show prejudice, right? And so, I mean, I read the original sentencing transcript and the facts of the underlying crime seem rather serious, to say the least. And I think the district court found that there was no prejudice because he would really probably likely to hit the same sentence. Why do you think that if we send it back that he would get a better or lighter sentence? If he receives... Because, I mean, let me finish. Because if it's non-binding, then obviously the government might make a recommendation, but the district court might disregard it. If it's binding, the district court might look at the facts and say, you know what, I'm not going to approve it. So what is your best argument of prejudice? Your Honor, our best argument for prejudice is that if he is sent back down, then... Based off what we've received, the fact that it's a 37-year plea, our position is that that would be the principles of a binding plea under 11 C1C. Now, it is true that the district court would have to accept it. And at this point, the district court should not have to unring a bell, that they've heard the testimony that's been presented. But our position is that the district court would be able to review the terms of the plea agreement as it's being presented in order to determine whether or not it should be accepted with the mindfulness that there have been post-conviction proceedings that might affect it. I would like to... Very briefly, counsel, was there any contemporaneous indication that Mr. Fields was receptive to any sort of plea agreement that would have involved more than 20 years in prison? Your Honor, the evidence has indicated that he was unreceptive. The evidence that has been submitted by the United States Attorney's Office has indicated that he would have been unreceptive. We submit that had he been presented with the advantages and disadvantages of a 37-year plea in light of everything that happened, in light of the fact that his second motion to suppress had been struck, in the light of the fact that his motion for continuance had been denied, and in the light of the fact that his co-defendants had already been sentenced, things happen. When a person starts to see the whites in the jurors' eyes, things happen. And we submit that under those circumstances, and as such to be fleshed out in the district court on the evidentiary hearing, that it would be potentially likely that there would be the prejudice finding that we're looking for. Thank you. Thank you, Mr. Gordon. Mr. Falvey, is it? Falvey, Your Honor. Falvey. Okay, thank you. Good morning, Your Honors. Joe Falvey for the United States. May it please the Court. As the district court recognized, the claim that the defendant presented below involved an uncapped plea offer that the defendant filed. The district court rightly rejected that claim because the defendant failed to establish prejudice. As the district court explained, the uncapped plea offer would have led to the exact same convictions as going to trial. It would have led to the same brutal facts being presented at sentencing. And it would, perhaps most importantly, it would have led to the exact same guideline range applying at sentencing as going to trial. But the district court seemed to have been confused as to what the basis of Mr. Fields' claim is, right? I mean, I think Mr. Fields was saying that he got a 37-year plea or that his attorney told him that there was a 37-year plea. And the district court was looking at the plea agreement or the draft plea agreement that came out of discovery. So that struck me as a little odd. Your Honor, I don't think the district court was confused here. I think the district court took the defendant at his word when the defendant explained what sort of claim he was pursuing. I think the most important thing on this is the defendant's server ply, which is docket entry 516 at pages 2 or 3. And there, at the tail end of briefing on this issue below, the defendant told the district court, this case turns on whether he was adequately advised on the plea agreement that he filed. Quote, the plea agreement filed by Fields. That's how the defendant put it. And the plea agreement he filed is the uncapped plea offer. So, having been told that, the district court, I think, was exactly right to then resolve that claim, to respect Mr. Fields' decision to litigate the case in that way, and address and reject the claim that he did present. Mr. Falvey, I think a fair reading of the reply brief below from the defendant indicates that what we're calling the uncapped plea was filed to make an evidentiary point that we couldn't be sure about whether Mr. Oskudinsky's, about Mr. Oskudinsky's representation that he had not received, the 37-year plea or any other plea. And if the district court was confused about that, that's fine. But I would advise the government to make its arguments on the merits, rather than sort of, I think, misrepresenting the reply brief below. Certainly, Your Honor. I think we have strong merits arguments as well. If the claim is preserved on a 37-year plea, there are two, potentially three reasons why the court should still affirm. The court's decision below whether or not to hold an evidentiary hearing is reviewed for an abuse of discretion. And the district court, she did not abuse her discretion in this case for a few reasons. The first is that the defendant did not sufficiently allege with detailed and specific information that there was, in fact, a 37-year plea offer on the table. As I think some of the questions have highlighted, we don't know much at all about the alleged 37-year plea, except that the defendant alleges that his lawyer referenced that number and referenced the number 37. But we don't know whether it was binding, not binding. We don't know any of the other terms. We don't know whether it included an appeal waiver. And for those reasons, I think this case is quite similar to Martin, where similarly, there were allegations that the government extended a 30-year plea there. And this court in Martin said, that's not enough detail to get to an evidentiary hearing. We need more information to establish at least something of an evidentiary basis to go forward to an evidentiary hearing. Well, don't we have that here? Because we have Mr. Skudinski saying that he didn't receive any plea. And then from discovery, we see this proposed plea with his name on it that obviously mentions the motion to suppress. It was after that time. And so that kind of undercuts Mr. Skudinski's assertion. So that, along with Mr. Field's attestation, isn't that enough for an evidentiary hearing? We don't think so, Your Honor, because Mr. Skudinski's declaration is not affirmative evidence that there was a 37-year plea on the table. It does, for purposes of appeal, acknowledge that it can't withstand the filing of the uncapped plea offer, that we're not disputing the genuineness of the uncapped plea offer in this appeal. But I don't think Mr. Skudinski's declaration serves as affirmative evidence that there was any sort of 37-year plea on the table. If anything, it supports the country. Because even if Mr. Skudinski made a mistake about the uncapped plea offer, his declaration otherwise is quite adamant that there were no other plea agreements. Were any of the other plea agreements that are in the record here 11 C1Cs? To my knowledge, no, Your Honor. Can I also ask whether it's – if I recall correctly, I had seen an offer that – what looked like an offer from the U.S. Attorney's Office that included on the signature line an S slash and the AUSA's name. That was not present on the document out of Skudinski's file. Is it your office's practice when you submit an offer to defense counsel to include the AUSA's signature indicating, in essence, I've got authority to make this offer and we're ready. If you sign it, then we've got a deal. Your Honor, commonly when we propose a plea offer to the other side, we would not include the S slash signature. But I can't say that that's never been included in a proposed plea offer, Your Honor. But some offers typically would be made without the signature on it yet. Yes, Your Honor. Okay. Thank you. Could you address the issue of prejudice, please? Certainly, Your Honor. So even if the defendant has sufficiently alleged that there may have been a 37-year plea on the table extended by the government, we still think that the court should affirm because the defendant hasn't sufficiently established prejudice at this stage for several reasons. First, we don't think that the defendant has sufficiently alleged that he would have in fact accepted the plea offer for 37 years for a variety of reasons. Many of them were discussed on opening. The defendant was extremely adamant before trial that he wanted to go to trial, so much so that he told his lawyer that he did not care whether a plea would result in a sentence of 37 years or 33 years or even 30 years. Regardless, the defendant was interested in trial. And those sorts of statements under cases like Foster are highly probative of the defendant's extreme reluctance to go to trial. So we have that. We also have the fact that we don't know the terms of the plea agreement, so we have no good reason to think that it would have been so attractive to the defendant that he would have accepted it at the end of the day. As the court noted, we don't know whether it was binding or not. Even if it were binding, the district court may well have rejected it given the brutality of the crime that the defendant committed. And for those reasons, among several others, we don't think that there's been a sufficient showing of prejudice at this stage, Your Honor. Judge Hamilton, anything else? No, thank you. Thank you, Your Honors. We would ask that the court affirm. Thank you. Mr. Gordon, I'll give you a minute. Judge, thank you for the minute. We would just point this court to page 42 of our short appendix, where the district court indicates confusion with regards to what offer we're dealing with. The district court indicated that the offer was submitted to Mr. Fields and to Mr. Skidinski, but it was the uncapped plea offer. And that's on page 42 of our short appendix. It's the district court's decision. We would submit that this court in Day determined that the denial of an evidentiary hearing was that reversal of a denial of an evidentiary hearing was based on a misreading of Day's submissions. And we submit that in this situation, there's also been a misreading by the district court. We would submit to this court that that, along with everything else that we've said, is sufficient for a reversal. Thank you. Thank you, Judge. Thank you, Judges. The case will be taken under advisement.